(C.D. 4253)

ALLOYS UNLIMITED, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 17, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Herbert P. Larsen* and *Joseph I. Liebman,* trial attorneys), for the defendant.

Before Watson, Maletz, and Re, Judges

Watson, Judge: The ten protests herein, consolidated for the purpose of trial, place in issue the classification of an importation invoiced as " 'TANWAX' Crystal Bonding Cement" which was manufactured and exported from England.[1]

The importation was classified as a mixture in whole or in part of a product provided for in subpart C, part 1 of schedule 4 of the Tariff Schedules of the United States pursuant to item 409.00 and was assessed with duty at the rate of 45% ad valorem plus 7¢ per pound.

Plaintiff claims that classification should be made pursuant to item 494.60 of said tariff schedules as "cements, not specially provided for" dutiable at the rate of 5% ad valorem.

We note at this point that the parties have stipulated that the importation is describable as a mixture in part of dicyclo-hexanol phthalate, which is dutiable as a plasticizer under item 405.40. As a consequence it was properly classified unless it is a cement pursuant to item 494.60 which latter provision has been designated in schedule 4 of part 13, headnote 1, as governing any product described both in that part and in part 1. Defendant agrees that if the importation is shown to be a "cement" within the scope of item 494.60, that provision will control the classification herein.

The testimony of the sole witness in this case, Mr. Robert Gazza, product manager of plaintiff's Semi-Conductor and Electrical Contacts Division, establishes that plaintiff is the only importer of this product. It is used by manufacturers of semi-conductors for the purpose of securing silicon wafers to steel plates so that the wafers may be cut or diced. In use, the steel surface is heated, smeared with the importation which then melts into a thin film. A silicon crystal is placed on the film, a weight is placed on top of it and the unit is allowed to cool. The importation then holds the silicon wafer while it is being sliced after which the bond is loosened by the use of hot water. Exhibit 3 consists of a few pieces of silicon wafer bonded to steel plates in a demonstration of the use of the importation.

The witness further testified that the importation is normally used to hold the silicon crystals in conjunction with steel plates for a half hour to an hour. Tanwax is the name under which the plaintiff sells the imported merchandise. The witness further testified that the

---

[1] We note that the entries in protests 66/48835, 67/17463, 67/56471 and 69/33321, were liquidated less than 60 days after appraisement. In the absence of a duly filed appeal for reappraisement in these instances the appraisements were valid, the liquidations based thereon final and the protests effective to invoke the jurisdiction of this court. *John V. Carr & Son, Inc.* v. *United States,* 66 Cust. Ct. 316, C.D. 4209 (1971).

importation melts at about 140 degrees centigrade, hardens to a solid when cooled to about 100 degrees centigrade and dissolves again in hot water and detergent at about 180 to 190 degrees Fahrenheit.

This dispute centers on whether or not the importation is a cement. Plaintiff points out that the testimony shows the sole use of the importation is to bond the silicon wafers to the steel plate and that in so doing the importation causes these bodies to adhere to one another. Plaintiff cites the case of *Norton & Ellis, Inc.* v. *United States*, 52 Cust. Ct. 76, C.D. 2440 (1964), in which this court held certain merchandise dutiable as cement not specially provided for pursuant to paragraph 205(d) of the Tariff Act of 1930, as modified by T.D. 51802. In that case the court cited with approval the definition of cement in Webster's New International Dictionary (2d ed.) as "[a]ny substance used by men or animals for making bodies adhere to each other, as asphalt, glue, gypsum, lime, paste, plaster of Paris, Portland cement, tar, etc." We adhere to this definition of cement and in so doing find that the instant importation falls within the common meaning of that term.

Defendant argues that the importation does not really function as a cement or a bonding agent and contends that it serves as a "close fitting mold or cast having cushioning attributes." Defendant claims that the importation must envelop the sides of the wafers to form a sort of die in order to function properly. After close analysis of the testimony and study of exhibit 4, we find we cannot agree with the defendant's contention. It appears that the principal bonding action of the importation is performed vis-a-vis the surfaces of the wafer and the steel plate and whatever overlapping to the sides of the wafer may occur is only the result of the fluid and impressionable state of the importation at the time of this application. Accordingly, it comes within the common meaning of "cement" and its use is as a cement and not as a material for purposes of embedment or as some sort of die.

Defendant further contends that based on the record herein there is a reasonable inference that the importation is a wax and that it was incumbent upon the plaintiff to negate this, citing, *Davies, Turner & Co.* v. *United States*, 61 Cust. Ct. 311, C.D. 3621, 292 F. Supp. 722 (1968). We are of the opinion that no such inference exists nor could it withstand the direct and positive proof offered by plaintiff regarding the *eo nomine* classification of the importation. Such inferences may have to be contended with in a case where plaintiff is arguing for classification by similtude or as nonenumerated articles, since, to invoke either of those provisions claimant must establish that the merchandise is not included within any of the enumerating provisions of the tariff act. Here, however, plaintiff seeks to establish that the merchandise falls within an *eo nomine* provision and may rely on its proof regarding the scope of that provision. Once plaintiff has made a *prima facie*

case, it would be *defendant's* burden herein to support a claim that the importation is a wax and properly classifiable other than as a cement.

The fact that the importation has some waxlike characteristics and is named Tanwax is of little moment in the face of the clear and convincing proof regarding the use of the importation in bonding one surface to another, evidence which has not been contradicted by defendant. The testimony establishes to our satisfaction, that the plaintiff is the only importer of this product and the testimony of Mr. Gazza regarding its use as a cement establishes its chief use in the United States.

For the above reasons, we find that the importation is properly classifiable pursuant to item 494.60 of the Tariff Schedules of the United States as a cement not specially provided for and is dutiable at the rate of 5% ad valorem.

Judgment will issue accordingly.